UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-CR-105-RLJ-HBG |
| | ) | |
| JERRY LEE CRAIG, and | ) | |
| BRADLEY SHAWN CRAIG, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Defendants' Joint Motion for Issuance of Subpoena Duces Tecum [Doc. 118], filed October 3, 2019. The Defendants ask the Court to issue a subpoena duces tecum to the records custodian of the National Crime Information Center ("NCIC"), requiring the production of all NCIC inquiries and logs documenting such inquiries for Vehicle Identification Numbers ("VINs") made by the Sullivan County, Tennessee Sheriff's Department and the Bristol, Tennessee Police Department between 1:00 p.m. on April 28, 2017, to 9:30 a.m. on April 29, 2017, at 249, 255, and 265 Morrell Creek Road, Bluff City, Tennessee. The Defendants ask that these records be produced to defense counsel because they are necessary for the Court's determination of the Defendants' motions to suppress evidence seized pursuant to search warrants for the above listed properties. The Defendants maintain that this evidence will reveal that the officers requested VINs for vehicles, boats, and motorcycles, not within the scope of the search warrant, prior to the alleged consent by Defendant Jerry Craig.

The Government responds [Doc. 121] that it does not object to the Defendants' motion. However, it states that the Defendant's argument regarding the timing of the officers' requests for VINs is moot, because the Defendants have no expectation of privacy in the VINs,

which the officers could see while lawfully on the property pursuant to the search warrant.

For the reasons discussed herein, the Court finds that the Defendants may subpoena the requested records. However, the records must be provided to the Court and the Defendants must comply with the *Touhy* regulations. Accordingly, the Defendants' motion [**Doc. 118**] is **GRANTED in part**. The Defendants are **DIRECTED** to submit an amended subpoena duces tecum, requiring the requested records be submitted to the Court on or before **May 15, 2020**. The Defendants are also required to provide a "demand" to the Assistant United States Attorney in charge of this case, pursuant to 28 C.F.R. § 16.23(c), on or before **May 1, 2020**.

## I. BACKGROUND AND POSITIONS OF THE PARTIES

On April 28, 2017, law enforcement executed a search warrant for the search of 249, 255, and 265 Morrell Creek Road, in Bluff City, Tennessee. The search warrant [Exh. 5, August 6, 2019 hearing] permitted the seizure of six John Deere lawn mowers, the keys to the mowers or a universal key, and burglary tools to include bolt cutters and grinders. While on the properties, law enforcement located numerous vehicles, boats, and motorcycles ("the vehicles") believed to be stolen. These vehicles form the basis of numerous charges in the instant case.

On May 1, 2019, the Defendants filed motions to suppress [Docs. 58 & 60] all evidence seized from the April 28, 2017 search of their properties pursuant to the search warrant. The Defendants argue that (1) the search warrant affidavit failed to provide probable cause to search their properties; (2) the search warrant is not sufficiently particular, because it does not distinguish among the properties, which are separately owned; (3) the officers exceeded the scope of the search warrant, because they began searching for stolen vehicles, other than the lawn mowers, as soon as they entered onto the property and before Defendant Jerry Craig

2

allegedly gave consent to search; (4) Defendant Jerry Craig did not knowingly and voluntarily consent to the search of the property; and (5) Defendant Jerry Craig lacked authority to consent to the search of 255 Morrell Creek Road, which is owned by Defendant Bradley Craig. The Court held evidentiary hearings on these and the Defendants' other pretrial motions on August 6 and 14, 2019.

At the conclusion of the August 14 hearing, defense counsel asked to supplement the record with the "VIN runs," which they argued would show the officers exceeded the scope of the search warrant by continuing to search after the lawn mowers were found but before Defendant Jerry Craig allegedly gave consent [Doc. 105, Transcript of Aug.14, 2019 hg, pp.39-40]. Defense counsel noted that the Government said it would provide the information that they intended to include in the proposed supplemental exhibit in a week [Doc. 105, p.40]. The Government asked the Court to reserve ruling on whether it would accept the proposed supplemental exhibit until after argument [Doc. 105, p. 41]. Defense counsel also requested the opportunity to present their closing arguments in a post-hearing brief. The Court granted this request and permitted several extensions of the deadline for filing post-hearing briefs. The Government [Doc. 115] and the Defendants [Doc. 116 & 117] filed post-hearing briefs on October 2, 2019.

On October 3, 2020, the Defendants filed the instant Joint Motion for Issuance of Subpoena Duces Tecum [Doc. 118]. In the motion, they state that the Government provided recordings from the dispatcher for the requested time frame, showing that the officers did not ask the dispatcher to check any VINs. The Defendants contend that the officers testified at the evidentiary hearings that, at a minimum, they made VIN inquiries for the lawn mowers. The Defendants assert that Assistant United States Attorney Andrew Parker told them that the local

3

dispatch office does not keep a log of VIN inquiries.

The Defendants contend that through their independent investigation, they have learned that officers can make VIN inquiries in the NCIC database from their police cars and that the NCIC maintains a log of these VIN inquiries, using the officers' Originating Agency Identifier. The Defendants assert that "[l]aw enforcement and prosecuting agencies may request this information via email directly from the [Federal Bureau of Investigation ("FBI")], who controls the NCIC database" [Doc. 118, p.2]. Defense counsel have consulted with the FBI's legal counsel, who states that the FBI will not give the NCIC logs to the Defendants or to the prosecuting attorneys in this case to be disclosed to the Defendants. Instead, the FBI maintains that the Defendants must comply with the *Toughy* regulations, which include a review process by the local FBI office and United States Attorney's Office. The Defendants assert that "[g]iven these additional steps required to obtain the records, which the parties believe will establish the timing of all VIN inquiries, a subpoena duces tecum will be necessary" [Doc. 118, p.2]. The Defendants contend that the requested information is essential to their defense and likely constitutes *Brady* material. Additionally, they contend that they are not able to pay the witness fee and have both previously been adjudged indigent by the Court. They ask the Court to grant the issuance of a subpoena duces tecum for these records to be served by the Federal Defender Services of Eastern Tennessee, Inc. ("FDS").

As noted above, the Government responds [Doc. 121] that it does not oppose the Defendants' motion for a subpoena duces tecum. However, it affirms its position that the Defendants' argument regarding the timing of any VIN inquiries is moot, because the Defendants have no expectation of privacy in the VINs. The Government argues that the officers were lawfully on the property to execute a search warrant and that the officers' looking through

4

the window of vehicles on the property to obtain VINs is not a search.

The parties appeared before the undersigned on November 22, 2019, for an arraignment on the Superseding Indictment and motion hearing. Assistant United States Attorney Andrew C. Parker appeared on behalf of the Government. Assistant Federal Defender Nikki C. Pierce represented Defendant Jerry Craig, and Attorney David L. Leonard represented Defendant Bradley Craig.

Ms. Pierce stated that the Government does not oppose the motion for a subpoena duces tecum and the parties are simply awaiting the Court's ruling. The Court noted that a subpoena duces tecum must order the documents to be produced to the Court, not to counsel's office. Ms. Pierce stated that the Defendants did not object to amending the subpoena duces tecum, attached to the motion, to direct the FBI to produce the records to the Court, as long as both parties get access to the records. The Court asked whether all requirements for seeking the subpoena duces tecum had been met. Ms. Pierce said that in order to comply with the *Toughy* regulations, she would need to send a demand letter to the Department of Justice. She said the Defendants are asking to forego the *Toughy* requirements. However, she said that once the Court orders the subpoena duces tecum, defense counsel could make the final arrangements to comply with the *Toughy* requirements and that she has a form letter that she could send.

Ms. Pierce did not respond to the Government's assertion in its response that the Defendants' argument regarding the NCIC records is moot. Both Mr. Leonard and AUSA Parker had no comment on the motion.

## II. ANALYSIS

As discussed herein, the Court finds that the Defendants' request for the NCIC records and logs is reasonable and specific and the records sought are relevant. However, the

proposed subpoena duces tecum must be amended, as directed herein, and the Defendants must comply with the *Touhy* regulations.

**A. Subpoena Duces Tecum Pursuant to Rule 17(c)**

The Defendants seek to subpoena the NCIC records and logs from the NCIC records custodian at the FBI, pursuant to Federal Rule of Criminal Procedure 17(c). Rule 17(c)(1) provides as follows:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered into evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

"A subpoena duces tecum must be reasonable, specific, and the documents requested must be relevant." *United States v. Justice,* 14 F. App'x 426, 433 (6th 2001). Importantly, Rule 17(c) is not intended to be used as a discovery device. *United States v. Nixon*, 418 U.S. 683, 702 (1974); *see also United States v. Vassar,* 346 F. App'x 17, 24 (6th Cir. 2009); *Justice*, 14 F. App'x at 432. Instead, as the plain language of the rule states, the items designated in a subpoena duces tecum are to be produced *for entry into evidence*, even though the court may permit their production and inspection by the parties before the trial or proceeding at which they are to be introduced. Fed. R. Crim. P. 17(c)(1).

In *United States v. Nixon*, the Supreme Court provided a test for courts to apply when determining whether to issue or deny a Rule 17(c) subpoena. 418 U.S. at 699. A court should require production pursuant to a Rule 17(c) request only if the moving party shows:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial

6

> and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir. 1990) (listing the *Nixon* factors).

In the instant case, the Court finds that the Defendants have satisfied the *Nixon* requirements. First, the Defendants have shown that the requested NCIC records and logs are relevant to their motions to suppress evidence seized pursuant to a search warrant. The Defendants argue that the NCIC records will show that the executing officers exceeded the scope of the search warrant by requesting checks of VINs of vehicles other than the lawn mowers, which were the only vehicles authorized by the search warrant. Although the Government states [Doc. 121] that it does not oppose a subpoena duces tecum for the NCIC records and logs, it maintains its position [*see* Doc. 115, pp.10-12] that the Defendants had no expectation of privacy in the VINs of the vehicles on the property, pursuant to *New York v. Class*, 475 U.S. 106, 114 (1986). The Government also argues, in its post-hearing brief [Doc. 115, pp. 4-5], that the officers were lawfully on the property executing a search warrant at the time they made any VIN inquiries and that the record is devoid of evidence that the officers requested checks of VINs before Jerry Craig gave valid consent to search the entire property. The Court finds that the timing of the officers' requests for VIN checks is relevant to the Defendants' argument that the officers exceeded the scope of the search warrant by continuing to search, after the lawn mowers were located on the property but before Jerry Craig may have provided consent.[1]

The second *Nixon* factor requires the Court to find that the Defendants cannot otherwise obtain the NCIC records and logs of VIN inquiries without a subpoena duces tecum, despite their

---

[1] The Court notes that the Defendants dispute that Jerry Craig gave consent to search the parcel owned by Bradley Craig and also that he had authority, either actual or apparent, to give consent to search that lot.

7

use of due diligence. As noted above, the Defendants sought to supplement the record of the evidentiary hearings on the suppression motions with the dispatcher records on VIN checks. The Government provided the dispatch recordings from the local dispatcher approximately one month, after the August 14 hearing [*see* Doc. 111]. In the instant motion, the Defendants state that the recordings provided by the Government contain no VIN inquiries, not even for the lawn mowers. The Defendants relate that the Government also informed counsel that the local dispatcher did not keep logs of VIN inquiries.

After failing to obtain any data on VIN inquiries through discovery of the local dispatch recordings, defense counsel next sought to obtain this information from another source. Believing that, if the officers made VIN inquiries through accessing NCIC on the computers in their patrol cars, NCIC would retain records of the inquiries, defense counsel sought the NCIC records directly from the FBI, which maintains the NCIC database. According to the Defendants' motion, legal counsel for the FBI told defense counsel that the FBI would not release the information without a subpoena and compliance with the *Touhy* regulations.

The Defendants do not state that they made a discovery request to obtain the NCIC records held by the FBI from the Government's counsel in this case. However, their motion states that the FBI's legal counsel said the agency would not honor an email request from the United States Attorney's Office, if Government's counsel intended to turn the information over to defense counsel. At first glance, the NCIC records held by a federal law enforcement agency would appear to be discoverable. Federal Rule of Criminal Procedure 16(a)(1)(E) provides that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy . . . data, . . . or portions [thereof], if the [data] is in the government's possession, custody, or control and . . . the item is material to preparing the defense[.]" Fed. R. Crim. P. 16(a)(1)(E)(i).

However, assuming the NCIC records are material,[2] they are not in the "possession, custody, or control" of the United States Attorney's Office in this case. Records are in the possession of the agency that aided in the investigation of the case are considered to be in the government's control. *United States v. Skaggs*, 327 F.R.D. 165, 174 (S.D. Ohio 2018).

> The prosecution is not required to conduct an interagency search for evidence. However, for Rule 16 purposes, material will be considered as being in the possession of the government only if it is in the actual possession of the prosecutor or if the prosecutor has knowledge of and access to the material while it is in the possession of another federal agency.

*Id.* In the instant case, the prosecutor does not have actual custody of the NCIC records, nor does the record before the Court reveal that FBI participated in the investigation of the Defendants. Accordingly, it does not appear that the Defendants could seek the NCIC records and logs through the discovery process. The Court finds that the Defendants have diligently pursued evidence of the timing of the VIN inquires and are unable to obtain them without a subpoena duces tecum.

The third *Nixon* factor is that production and review of the information is necessary for the party to properly prepare for trial. The Defendants seek to introduce the NCIC records and logs as a supplemental exhibit to the August 6 and 14, 2019 evidentiary hearings. The Court

---

[2] "[E]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). An item is "material" when it "counter[s] the government's case or bolster[s] a defense" and would allow the defendant to "'alter the quantum of proof his favor[.]'" *United States v. Lykins*, 428 F. App'x 621, 624 (6th Cir. 2011) (per curiam) (quoting *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)). In the instant case, as discussed above, NCIC records revealing the timing of VIN inquiries are relevant to the Defendants' suppression arguments, but the Defendants will not know whether the records support their arguments, until they are produced to the Court and counsel reviews them. Accordingly, the records are only potentially material.

finds that the production and review of the NCIC records and logs are necessary for the Defendants to litigate their suppression motion. The Court also finds that resolution of the suppression issues in this case is necessary before the case can proceed to trial.

The fourth *Nixon* factor requires the Court to find that the Defendants' request for the NCIC records and logs is made in good faith and is not merely a "fishing expedition." The Court finds the Defendants' request is narrowly stated as to subject, place and time: The Defendants seek NCIC records and logs of VIN inquires made by the Sullivan County, Tennessee Sheriff's Department and the Bristol, Tennessee Police Department between 1:00 p.m. on April 28, 2017, to 9:30 a.m. on April 29, 2017, at 249, 255, and 265 Morrell Creek Road, Bluff City, Tennessee. Moreover, the Court finds that the Defendants have raised the issue of the timing of the VIN inquiries in relation to their suppression motions. Accordingly, the Court finds the Defendants are seeking specific evidence to inform the determination of their suppression motions and are not engaged in a fishing expedition.

In conclusion, the Court finds the Defendants' request for a subpoena duces tecum is reasonable, specific, and seeks relevant evidence. Accordingly, the Defendants' request for the subpoena duces tecum is granted. However, two procedural hurdles remain: The location of disclosure and compliance with the *Touhy* regulations.

### B. Location to Which the Records Must Be Produced

The proposed subpoena duces tecum attached to the Defendants' motion directs the NCIC Records Custodian to produce the requested records directly to defense counsel. The plain language of Rule 17(c)(1) requires the subpoenaed records be produced to the Court. The Court

may then permit the parties to review the records. The Court finds the subpoena must be amended to conform to this rule.

### C. *Touhy* Regulations

At the November 22 hearing, defense counsel asked the Court to find that the Defendants do not have to comply with the *Touhy* regulations. The Court cannot so find. Pursuant to the separation of powers doctrine, an executive agency can regulate its employees' production of documents in litigation. *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 469-70 (1951), *see also* 5 U.S.C. § 301. The Attorney General has established such regulations for Department of Justice employees, which are found at 28 C.F.R. §§ 16.21 through 16.29 and are known as the *Touhy* regulations. Pursuant to these procedures, the Assistant Attorney General, or his designee, evaluates whether an employee called upon to testify or to produce documents in litigation is permitted to disclose the requested information. *See* 28 C.F.R. §§ 16.21, et seq. Section 16.23(c) provides that

> [i]f oral testimony is sought by a demand in a case or matter in which the United States is a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought must be furnished to the Department attorney handling the case or matter.

28 C.F.R. § 16.23(c). Once the demand containing the summary of the testimony or information sought is submitted by the requesting party, the appropriate persons in the Department of Justice will decide whether the testimony will be disclosed. *See* 28 C.F.R. § 16.24.

Our appellate court recognizes the Government's interest in following the procedures established in the *Touhy* regulations:

> The Department of Justice has a legitimate interest in regulating access to government information contained in its files or obtained by its employees during the scope of their official duties. Without a procedure governing demands by potential litigants, the efficiency of the Department could be greatly impaired. The question of whether these procedures deny the defendants their Sixth Amendment right to call and cross-examine witnesses is not reached until the defendants follow the procedures and then have their demands denied.

*United States v. Marino*, 658 F.2d 1120, 1125 (6th Cir. 1981).

In the instant case, the Defendants contend that the FBI declines to provide the NCIC records and logs to the Defendants unless they obtain a subpoena duces tecum and submit a demand, i.e., a summary of the desired information, in compliance with the *Touhy* regulations. At the November 22 hearing, Ms. Pierce indicated that she was willing to provide a demand letter in compliance with the *Touhy* regulations, if the Court required her to do so. In the instant case, the Court also finds that although the Defendants' failure to comply with the *Touhy* regulations does not prevent the Court from issuing a subpoena duces tecum, it does make any such subpoena vulnerable to a motion to quash. *See United States v. Brownfield*, No. 1:10–MC–00004–R., 2010 WL 4962947, *2 (quashing subpoena for an AUSA due to party's failure to comply with *Touhy* regulations). Accordingly, the Defendants are **DIRECTED** to file the required demand with the prosecuting attorney in this case.

### III. CONCLUSION

The Defendants' motion [**Doc. 118**] is **GRANTED in part**, in that the Court finds that the Defendants may subpoena the requested records. However, the records must be produced to the Court, which will then make them available to the parties, and the Defendants must comply with the *Touhy* regulations. If the Defendants are still seeking these records, the

12

Case 2:18-cr-00105-JRG   Document 177   Filed 04/23/20   Page 12 of 13   PageID #: 1134

Defendants must submit, on or before **May 1, 2020**, an amended subpoena duces tecum, requiring the requested records be produced to the Court at the James H. Quillen United States Courthouse, 220 West Depot Street, Suite 200, Greeneville, Tennessee 37743, on **May 15, 2020**.[3]  If the Defendants are still pursuing these records, the Defendants are also required to provide a "demand" to the Assistant United States Attorney in charge of this case, pursuant to 28 C.F.R. § 16.23(c), as soon as possible, but no later than **May 1, 2020**.

    **IT IS SO ORDERED**.

ENTER:

*/s/ Bruce Guyton*
United States Magistrate Judge

---

[3] This deadline for the production of the NCIC records and logs to the Court falls after the current trial date of May 5, 2020.  The undersigned will hold a telephonic pretrial conference on April 27, 2020, at 10:00 a.m., to address the trial date and schedule in this case.